IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ADAM J. COATES,                          )
                                         )
                    Plaintiff,           )          Civil Action No. 08-0569
                                         )
          v.                             )
                                         )
MICHAEL J. ASTRUE,                       )
COMMISSIONER OF SOCIAL SECURITY,         )
                                         )
                    Defendant.           )

MEMORANDUM ORDER

CONTI, District Judge

## *Introduction*

Pending before this court is an appeal from the final decision of the Commissioner of

Social Security ("Commissioner" or "defendant") denying the claim of Adam J. Coates

("plaintiff") for supplemental security income ("SSI") under Title XVI of the Social Security Act

("SSA"), 42 U.S.C. §§ 1381-83; 20 C.F.R. Pt. 416.  Plaintiff contends that the decision of the

administrative law judge (the "ALJ") that he is not disabled and therefore not entitled to benefits,

should be reversed because the decision is not supported by substantial evidence.  Defendant

asserts that the decision of the ALJ is supported by substantial evidence and should be affirmed.

The parties filed cross-motions for summary judgment pursuant to Rule 56(c) of the Federal

Rules of Civil Procedure. The court will grant summary judgment in favor of defendant and will

deny plaintiff's motion for summary judgment because the ALJ's decision is supported by

substantial evidence of record.

## *Procedural History*

Plaintiff filed an application for SSI benefits on December 20, 2004.  (R. at 20.)  The

disability report completed by the Social Security Administration on January 18, 2005, indicated

that plaintiff alleged disability since August 4, 1992, but recommended the onset date be changed to December 31, 2004. (R. at 58.) Plaintiff alleged "disability since 12/31/04 due to left arm paralysis, severe head and neck trauma, and a left leg fracture." (R. at 21.) Plaintiff's medical records from Mercy Jeannette Hospital and Latrobe Area Hospital ("LAH") were considered. (R. at 22.) Plaintiff's claim was denied on March 2, 2005, however, because he failed to attend a scheduled medical examination and disability could not be determined. (R. at 21.) The Notice of Disapproved Claim dated March 10, 2005 noted that the "examination was needed to fully evaluate [plaintiff's] condition." (R. at 22.) On May 11, 2005, plaintiff filed a timely written request for hearing by an administrative law judge ("ALJ"). (R. at 90-100.) A hearing was conducted on December 27, 2005, and was continued on April 3, 2006. (R. at 18-19.) Plaintiff, who was represented by counsel, testified at the hearing and a vocational expert ("VE") also testified. (R. at 176-216.)

On May 25, 2006, the ALJ gave notice of his decision that plaintiff was not disabled under § 1614(a)(3)(A) of the SSA. (R. at 10-17.) Plaintiff filed a timely written request to the Appeals Council on June 27, 2006, which was denied on March 11, 2008. (R. at 4-9.) Plaintiff filed this action seeking review of the ALJ's decision.

### *Plaintiff's Background and Medical History*

**Testimony from Hearing**

During the hearing before the ALJ on April 3, 2006, plaintiff testified that in 1992 he was involved in a motorcycle accident in which his left arm was severely damaged ("first injury"). (R. at 187, 199.) He has a steel plate in his left arm, which is much smaller than his right arm. (R. at 188.) He was originally left handed, but he now wears a brace on his left arm at all times. (Id.) He stated that he cannot do anything with his left hand, although he can move his left

shoulder. (Id.) In addition to the injury to his shoulder, veins and arteries were taken out of his leg for surgery on his left arm, and he injured his head, upper left leg, neck, and lower back. (R. at 189, 196, 199.)

During the hearing, plaintiff testified that in 1999 he was involved in an automobile accident in which he broke bones in both of his ankles ("second injury"). (R. at 200.) Doctors reconstructed the broken bones with steel screws and plates that are still in his body. (Id.) He was hospitalized for a week, spent another four to six weeks in a nursing home, and was in a wheelchair for several months. (R. at 200-01.)

Plaintiff testified that in 2004 he fell over a hill and suffered a compound fracture in his leg ("third injury"). (R. at 191-92.) Doctor Dolecki, who treated him for the third injury, prescribed a walker, which he cannot use, and a wheelchair, which he received from his friend. (R. at 204-05.)

Plaintiff testified that due to muscle spasms he cannot stand for more than three minutes at a time without having to sit down. (R. at 192.) He must lie down after sitting for prolonged periods. (R. at 192-93.) During the hearing, he sat for what he estimated to be ten to fifteen minutes and testified that it was very painful. (R. at 192.) He has trouble sleeping, and takes naps four or five times a week for an hour at a time. (R. at 193-94.) He has weakness and numbness down his entire left side. (R. at 196.) His lower back is thrown out of place when he lifts with his right arm. (R. at 199.)

Plaintiff testified that he takes Oxycontin[1] for his pain. (R. at 194.) He attended a pain clinic at Westmoreland Regional Hospital with Dr. Navalgund in 2005 and currently attends a

---

[1] Oxycontin is a brand name for oxycodone hydrochloride, an opioid analgesic "indicated for the management of moderate to severe pain." Physicians' Desk Reference 2680-81 (62nd ed.

pain clinic with Dr. Jabbour, who sees him once every couple of months. (R. at 148-62, 194-95.) He took Zoloft, an anti-depressant, and might be prescribed Lexapro, another anti-depressant. (R. at 197-98.) At the time of the hearing, he had been without pain medication for three days and testified that his pain was "really bad." (R. at 203.)

**Records from Latrobe Area Hospital**

In 2004, plaintiff received treatment for his third injury at LAH. (R. at 102.) Dr. Dolecki, the physician that evaluated plaintiff, diagnosed him with fractures to his left tibia and left proximal fibia. (R. at 103.) Dr. Dolecki stated that the reason for plaintiff's hospitalization was a fall sustained at a rock concert. (Id.) Plaintiff's tibia fracture was treated with an intramedullary nail device and the fibula was treated with closed means. (Id.) X-rays performed in the LAH radiology department revealed no abnormalities in plaintiff's pelvis, cervical spine, right foot, or chest. (R. at 105-06, 108, 110.) An x-ray of plaintiff's right ankle, however, revealed a plate and multiple screws to the distal tibia, which the radiologist, Dr. Hoffman, identified as an old fixation of a distal tibial fracture. (R. at 107.) An x-ray of plaintiff's left lower leg showed screws in the talus, along with the fractures to his tibia and fibula. (R. at 109.)

**Records from Westmoreland Regional Hospital**

Plaintiff attended the Westmoreland Regional Hospital ("WRH") Pain Management Center four times in 2005. (R. at 148-62.) During the initial visit, on March 4, 2005, Dr. Brinda Navalgund, the attending physician, reported that plaintiff's chief complaint was pain in his left arm, head, and back. (R. at 159.) At the time, plaintiff was not taking any medication. (Id.) He relieved his pain by taking epsom salt baths, getting massaged with tiger balm, and smoking marijuana. (Id.) He stated that ibuprofen did nothing for his pain. (Id.)

---

2008). The most frequent side effects include "constipation, nausea, somnolence, dizziness, vomiting, pruritus, headache, dry mouth, sweating, and asthenia." Id. at 2683.

Dr. Navalgund's physical examination identified no abnormal curvatures or deformities of plaintiff's lumbosacral, cervical, or thoracic spine. (R. at 161.) She noted that the range of motion in his cervical spine was decreased and that there was tenderness with palpation of his left trapezius. (Id.) Her examination of plaintiff's left arm revealed a decreased range of motion in the shoulder, decreased musculature in the elbow, and multiple scars and a decreased range of motion in the wrist. (Id.) Her examination of plaintiff's left knee revealed scars, tenderness, and decreased range of motion. (Id.) She noted that plaintiff's right leg was bigger than his left leg and that there was atrophy in his left arm. (Id.)

Dr. Navalgund's diagnoses were chronic controlled neuropathy[2], chronic controlled myofascial pain/myalgia/myositis, chronic controlled lumbar pain/lumbago[3] radiating down plaintiff's lower extremities, and chronic controlled general pain in his left arm and both legs. (R. at 162.) She prescribed MS Contin[4] for plaintiff and gave him samples of Celebrex[5] and Neurontin[6]. (Id.) She planned to recommend physical therapy for generalized deconditioning at a future visit. (Id.)

---

[2] Neuropathy is "[a]ny disease of the nerves." Taber's Cyclopedic Medical Dictionary 1459 (20th ed. 2005).

[3] Lumbago is "[a] general nonspecific term for dull, aching pain in the lumbar region of the back." Taber's Cyclopedic Medical Dictionary 1267 (20th ed. 2005).

[4] MS Contin is a brand name for morphine sulfate, an opioid analgesic "indicated for the management of moderate to severe pain." Physicians' Desk Reference 2677. The most common side effects are "constipation, lightheadedness, dizziness, sedation, nausea, vomiting, sweating, dysphoria, and euphoria." Id. at 2679.

[5] Celebrex is a brand name for celecoxib, a nonsteroidal anti-inflammatory drug indicated for "the management of acute pain in adults," among other uses. Physicians' Desk Reference 3064, 3066.

[6] Neurontin is a brand name for gabapentin, an antiepileptic drug indicated for the management of postherpetic neuralgia in adults. Physicians' Desk Reference 2462-63.

At plaintiff's second visit, on April 5, 2005, he reported that the MS Contin seemed to be helping his pain, noting that he could "be a little more active with the kids." (R. at 156.) The doctor again prescribed MS Contin for plaintiff, noting "[w]e will see if headaches subside with the use of morphine for another month. (R. at 158.)

At his third visit, plaintiff reported that he had bought a home gym and was trying to work on a strengthening program. (R. at 152.) Dr. Navalgund switched plaintiff's medication from MS Contin to Oxycontin after complaints from plaintiff that MS Contin was causing headaches and constipation. (R. at 152, 154.)

At plaintiff's fourth visit, Dr. Navalgund reported that plaintiff's lower back and gait were improved. (R. at 150.) A range of motion test of his lumbosacral spine was tolerated better and he was able to forward flex to touch his toes. (Id.) The doctor again prescribed Oxycontin for plaintiff. (R. at 151.)

**Pennsylvania Department of Public Welfare Employability Assessment Form**

On January 10, 2005, plaintiff filled out a state employability assessment form as part of an application for general assistance benefits. (R. at 168.) Dr. Jabbour performed a physical examination of plaintiff as part of the application and designated him temporarily disabled for less than twelve months, due to a primary diagnosis of chronic pain in plaintiff's left arm and leg and a secondary diagnosis of chronic pain in both ankles. (R. at 169.) On February 28, 2006, plaintiff filled out another state employability assessment form. (R. at 167.) After performing another physical examination, Dr. Jabbour designated plaintiff permanently disabled due to a primary diagnosis of back pain and depression and a secondary diagnosis of chronic pain in his left arm and leg. (R. at 169.)

**Eckerd Drugs Patient History**

Eckerd Drugs' patient history of plaintiff from October 25, 2004 to October 24, 2005 shows that Dr. Navalgund prescribed MS Contin (morphine sulfate) to plaintiff twice during that period, on March 4, 2005 and April 5, 2005. (R. at 165.) She prescribed Oxycontin (Oxycodone CR) to plaintiff four times from May 3, 2005 to August 5, 2005, and she prescribed Oxycodone 5 mg capsules three times, on June 10, 2005, July 8, 2005 and August 5, 2005. (Id.) The last prescription date on the record for an opioid is August 5, 2005. (Id.)

**Vocational Expert Testimony**

The ALJ posed a hypothetical to the VE with respect to whether there were jobs in the national and local economy that could be performed by an individual who was limited to sedentary work which could be performed with one non-dominant upper extremity and without balancing, stooping, kneeling, crouching, crawling, and climbing, with the "option to sit and stand during the work day at 30 minute intervals." (R. at 211.) The VE testified that such an individual could work as a surveillance system monitor and in half of available product inspector positions. (Id.)

*Legal Standard*

After the Commissioner's final decision concerning an application for social security, the recipient of an adverse ruling may seek judicial review in a district court. 42 U.S.C. § 405(g) (2006). If the Appeals Council denies a request for review, then the decision of the administrative law judge becomes the final decision of the Commissioner. Sims v. Apfel, 530 U.S.C. 103, 106-07 (2000). Any finding of fact by the administrative law judge that is supported by substantial evidences is conclusive. 42 U.S.C. § 405(g).

> Substantial evidence is such relevant evidence as a reasonable mind might accept
> as adequate to support a conclusion. . . . It is more than a mere scintilla but may

be somewhat less than a preponderance of the evidence. . . . In the process of reviewing the record for substantial evidence, [the court] may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder.

Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotations and citations omitted).

### *Discussion*

A disability is "the inability to do any substantial gainful activity by reason of any medically determinable physical… impairment… which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In order to receive disability benefits, a claimant must have a severe impairment that makes him unable to do past relevant work or other substantial gainful work available in the national economy. Id. A severe impairment is one which significantly limits one's ability to do basic work activities. Id. § 416.920(c). A substantial gainful activity is any work that involves significant and productive physical or mental duties and is done for pay or profit. Id. § 416.910. Past relevant work is any substantial gainful activity performed within the last fifteen years which lasted long enough for the claimant to learn how to do it. Id. § 416.960(b)(1).

In order to evaluate a claim for SSI benefits, the Social Security Administration follows a five-step sequential evaluation process. Id. § 416.920(a)(1). First, it must be determined whether the claimant is currently doing any substantial gainful activity. Id. § 416.920(a)(4)(i). If he is currently doing any substantial gainful activity, then his claim is denied. Id. Otherwise, the inquiry proceeds to the second step, where the evaluator determines whether or not the claimant has any severe impairment. Id. § 416.920(a)(4)(ii). If he does not have a severe impairment, then the claim is denied. If the evaluator determines the claimant has a severe impairment, the inquiry proceeds to the third step, where the evaluator determines whether any of the claimant's impairments is equivalent to one of the listed impairments. Id. §

416.920(a)(4)(iii).  If the claimant has any of the listed impairments, he is considered disabled, and the inquiry ceases.  Id.  Otherwise, the inquiry proceeds to the fourth step, where the evaluator determines the claimant's residual functional capacity ("RFC") and whether the claimant can return to his past relevant work.  Id. § 416.920(a)(4)(iv).  If the claimant can return to work, he is not disabled, and the inquiry ceases.  Id.  Otherwise, the inquiry proceeds to the fifth and final step, where the evaluator determines whether or not the claimant can adjust to any other substantial gainful work available in the national economy.  Id. § 416.920(a)(4)(v).  If the claimant can adjust to other work, then he is not disabled.  Id.  If he is unable to adjust to other work, he is disabled, and is eligible for benefits.  Id.  The claimant bears the burden of proof with respect to the first four steps.  Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).  If the claimant meets that burden, the burden shifts to the Commissioner with respect to the fifth step.  Id. at 92.

**The ALJ's Decision**

On May 25, 2006, the ALJ found plaintiff was not disabled.  (R. at 17.)  The ALJ found with respect to step two that plaintiff "has the following severe impairments:  Residuals of left arm, left leg and leg ankle fractures, neuropathy of the left upper extremity and global dysfunction of the left arm," (R. at 14), with respect to step three, that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," (id.), and with respect to step four, plaintiff "has the residual functional capacity to perform sedentary work activity."  (Id.)  At the final step – step five, the ALJ found that plaintiff can perform "jobs that exist in significant numbers in the national economy," and therefore is not disabled.  (R. at 16.)

In the ALJ's determination in step three that plaintiff did not have any listed impairment or the equivalent thereof, he identified Listings 1.02B, 1.06, and 1.07 as listed impairments the plaintiff failed to meet. (R. at 14.) In determining plaintiff's RFC, he found plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." (R. at 15.) The ALJ based his credibility determination upon plaintiff's normal x-rays, Dr. Navalgund's report that medication controlled plaintiff's pain, plaintiff's purchase of a home gym, plaintiff's attendance at a rock concert, and plaintiff's testimony concerning his activities. (R. at 15-16.) The ALJ afforded little weight to Dr. Jabbour's assessments because he did not provide accompanying treatment notes and because of contradictory evidence in the record. (R. at 15.) The ALJ also noted plaintiff's failure to attend his scheduled consultative examination. (R. at 16.)

The ALJ, in determining plaintiff could perform jobs that existed in significant numbers in the national economy, cited plaintiff's age, work experience, high school education, RFC, and the VE's testimony. (Id.)

Plaintiff focuses on four alleged flaws in the ALJ's analysis. Plaintiff argues that 1) the ALJ failed to credit properly plaintiff's testimony regarding the severity of his symptoms; 2) the ALJ did not properly evaluate the opinions of plaintiff's treating physicians; 3) the ALJ erred at step three in determining that plaintiff's severe impairments did not meet the criteria of any listed impairment in 20 C.F.R. § 404 subpart P, appendix 1; and 4) the ALJ erred at step four in determining plaintiff's RFC. As will be discussed, there is substantial evidence of record to support the ALJ's evaluations of plaintiff's testimony, the weight afforded to the opinions of his

treating physicians, the determination that plaintiff's impairments did not meet the criteria of any listed impairments, and the determination of plaintiff's RFC.

**I.)**     **The ALJ's finding that plaintiff's testimony regarding the severity of his symptoms was not entirely credible is supported by substantial evidence.**

An administrative law judge must consider all symptoms, including pain, to the extent they can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §416.929(a); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).   There must be evidence of a condition that could reasonably produce pain, not evidence of the pain itself.  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  After medical evidence shows an impairment that could reasonably be expected to produce pain, the administrative law judge must evaluate the pain's intensity and persistence.  20 C.F.R. § 416.929(c)(1); see Hartranft, 181 F.3d at 362.  The administrative law judge must take a claimant's statements into account when evaluating the intensity and persistence of pain.  20 C.F.R. § 416.929(c)(4).  Even where medical evidence does not support complaints of pain, the administrative law judge should give weight to the complaints and should not disregard them unless there is contrary medical evidence.  Mason, 994 F.2d at 1067-68.

The administrative law judge must determine the extent to which a claimant is accurately stating the degree of pain and the extent to which he is disabled by it.  Hartranft, 181 F.3d at 362. Among the factors to be considered while reviewing a claimant's allegations of pain are "[t]he type, dosage, effectiveness, and side effects of any medication" the claimant takes or has taken. 20 C.F.R. § 416.929(c)(3).  When an administrative law judge fails to address testimony concerning side-effects of a claimant's medication, it may be proper to remand to the administrative law judge for further findings.  Stewart v. Sec'y of Health, Educ., and Welfare,

714 F.2d 287, 290 (3d Cir. 1983), see Lickenfelt v. Astrue, No. 07-0958, 2008 WL 2275538, at

**10-14 (W.D. Pa. May 30, 2008) (remanding for consideration of side-effects of medication).

The court must be mindful, however, that "'[d]rowsiness often accompanies the taking of

medication, and it should not be viewed as disabling unless the record references serious

functional limitations.'" Rutherford, 399 F.3d at 557 (quoting Burns v. Barnhart, 312 F.3d 113,

131 (3d Cir. 2002)).

If the medical evidence in the record is insufficient to determine a claimant's disability,

the Social Security Administration may schedule a consultative medical examination. 20 C.F.R.

§ 416.917. If a claimant fails or refuses to take part in such an examination without good reason,

the claimant may be found not disabled. 20 C.F.R. § 416.918(a).

An adverse credibility determination must contain specific reasons for the finding and

must be sufficiently specific to make clear the weight given to the claimant's statements and the

reasons for that weight. Social Security Ruling 96-7p. In Mason, the United States Court of

Appeals for the Third Circuit vacated an administrative law judge's ruling that the appellant was

no longer disabled. Mason, 994 F.2d 1058. The administrative law judge found the appellant

had "'exaggerated the chronicity, intensity and frequency of his symptoms,'" declining to take

into account medical tests that caused appellant significant pain, which conflicted with other

pain-free medical examinations considered by the administrative law judge. Id. at 1062, 1068.

The court of appeals rejected the administrative law judge's adverse credibility determination,

citing his failure to consider medical testimony that might have significantly affected his

analysis. Id.

In Hartranft, the court of appeals affirmed an administrative law judge's decision denying

the appellant's claim, despite the argument that the administrative law judge failed to take into

account appellant's subjective symptoms. <u>Hartranft</u>, 181 F.3d at 360, 362. The administrative law judge found the appellant exaggerated his pain, citing specific inconsistencies with the record. <u>Id.</u> The court of appeals held the administrative law judge's finding concerning the appellant's testimony was supported by substantial evidence. <u>Id.</u>

In <u>Rutherford</u>, the court of appeals held the administrative law judge had properly discounted the appellant's claims of drowsiness when no complaint of drowsiness appeared in the medical record and the administrative law judge found such a complaint to be inconsistent with the appellant's daily activities. <u>Rutherford</u>, 399 F.3d at 557. Conversely, in <u>Stewart</u>, the court of appeals held the administrative law judge erred by implicitly rejecting testimony regarding the side effects of medication and thereby failing to give his reasons for doing so. <u>Stewart</u>, 714 F.2d at 290.

In <u>Reefer</u>, the court of appeals reversed an administrative law judge's decision to terminate the appellant's disability benefits. <u>Reefer</u>, 326 F.3d at 380. The administrative law judge found the appellant's statements concerning her impairments to be not entirely credible. <u>Id.</u> The court of appeals stated that it would "ordinarily defer to an administrative law judge's credibility determination," but reversed and remanded because the administrative law judge had based his credibility determination on the appellant's responses to questionnaires rather than testimony at the hearing, and therefore had no opportunity to assess appellant's demeanor. <u>Id.</u> In <u>Walker v. Barnhart</u>, 172 Fed. App'x 423 (3d Cir. 2006), the court of appeals upheld denial of benefits to the appellant, who had failed to attend a consultative medical examination scheduled for him by an administrative law judge.

Here, there was sufficient evidence to support the ALJ's adverse credibility determination. He determined plaintiff could perform sedentary work activity with some

limitations, noting plaintiff's numerous injuries and claims that he was unable to stand more than three minutes at a time and had to take hour-long naps four to five times a week. (R. at 15.) To contrast plaintiff's claims, the ALJ noted plaintiff's normal x-rays, plaintiff's buying a home gym to work on a strengthening program, attending a rock concert, watching his girlfriend's children and his own children, watching television, caring for his own personal needs, and shopping. (R. at 15-16.)

The ALJ pointed to Dr. Navalgund's determination that plaintiff's pain was controlled with medication. (R. at 15.) Unlike the appellant in <u>Mason</u>, plaintiff presented no conflicting medical evidence which would have significantly affected the ALJ's analysis. <u>Mason</u>, 994 F.2d at 1068. The forms completed by Dr. Jabbour indicate the same chronic left arm, back, left leg, and bilateral ankle pain noted and treated by Dr. Navalgund, whereas in <u>Mason</u> the appellant presented two medical reports with contradicting testimony regarding the pain experienced. (R. at 148-62, 166-69); <u>see</u> <u>Mason</u>, 994 F.2d at 1068. Like the administrative law judge in <u>Hartranft</u>, the ALJ here indicated specific instances in the record that were inconsistent with plaintiff's alleged inability to perform sedentary work. (R. at 15-16); <u>see</u> <u>Hartranft</u>, 181 F.3d at 362. During the hearing the ALJ and plaintiff's counsel asked plaintiff numerous questions regarding his activities and medication, and the ALJ was able to assess his demeanor in responding to those questions, unlike the situation with the administrative law judge in <u>Reefer.</u> (R. at 176-216); <u>see</u> 326 F.3d at 380.

The ALJ only noted plaintiff's pain medication when stating that it controlled plaintiff's pain. (R. at 15.) Plaintiff testified that he takes Oxycontin, which is used for treatment of moderate to severe pain and can cause drowsiness. (R. at 194.) Although the ALJ's failure to discuss plaintiff's medication might implicate the need for a remand as in <u>Lickenfelt</u>, 2008 WL

2275538 at 10-14, plaintiff failed to attend a scheduled consultative medical examination which could have provided the opportunity for that information to be elicited. A claimant who fails to attend a scheduled consultative examination may be found not disabled. 20 C.F.R. § 416.918. Since plaintiff's own actions caused the record to be incomplete by missing – without explanation or excuse -- a consultative examination, the court finds the ALJ had sufficient evidence to support his finding with respect to the determination that plaintiff's testimony regarding the severity of his symptoms was not entirely credible.

**II.)    The ALJ did not fail to evaluate properly plaintiff's treating source and examining source opinions.**

An administrative law judge will always consider medical opinions in making a disability determination. 20 C.F.R. § 416.927(b). He will evaluate them and assign them determinative weight according to consideration of several factors. 20 C.F.R. § 416.927(d). Among the factors considered are whether or not the source of the medical opinion is a treating or examining physician, the evidence offered in support of the medical opinion, and the consistency of the medical opinion with the record as a whole. 20 C.F.R. § 416.924(d)(2)-(4).

An administrative law judge must give great weight to a treating physician's reports, "'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). A treating physician's opinion may be rejected with contradicting evidence, and the opinion may also be given "'more or less weight depending upon the extent to which supporting explanations are provided.'" Brownawell, 554 F.3d at 355 (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).

Additionally, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason, 994 F.2d at 1065. A physician's opinion about a claimant's eligibility for a separate disability program has limited significance to the claimant's eligibility for SSI benefits. Hartranft, 181 F.3d at 362.

In Brownawell, the court of appeals reversed an adverse ruling by an administrative law judge. Brownawell, 554 F.3d 352. The administrative law judge had rejected the opinions of two treating medical sources in favor of the opinion of a nonexamining psychologist due to alleged inconsistencies in the treating medical sources' opinions. Id. In reversing, the court of appeals reiterated that "a longtime treating physician's opinion carries greater weight than that of a non-examining consultant." Id. at 357.

In Mason, the court of appeals held that a form concerning the appellant's ability to work which merely required the completing physician to check boxes and fill in blanks, without accompanying explanations, was insufficient to support a finding concerning the appellant's ability to perform sedentary work. Mason, 994 F.2d at 1065-66. In Hartranft, the court of appeals held that a doctor's report stating the appellant should not be released for any kind of work had little significance to the appellant's social security claim, having been made in connection with a workers' compensation claim. Hartranft, 181 F.3d at 362.

Here, the ALJ discussed the findings of Dr. Jabbour and Dr. Navalgund. He noted Dr. Navalgund's findings regarding plaintiff's medical history, which largely corroborated plaintiff's testimony, and her finding that plaintiff's pain was controlled with medication. (R. at 15.) The ALJ also discussed the forms completed by Dr. Jabbour, and afforded little weight to Dr. Jabbour's conclusions regarding plaintiff's ability to work, based upon contrary evidence in the record and the lack of any supporting treatment notes. (R. at 15.)

The ALJ did not "summarily reject" the forms completed by Dr. Jabbour, as plaintiff suggests, but rather assigned them weight based upon the supporting evidence provided. While Dr. Jabbour is plaintiff's treating physician, the record supports the ALJ's determination to afford his opinion little consequence. Here, like the physician's form discussed in <u>Mason</u>, the employability assessment forms completed by Dr. Jabbour were not accompanied by detailed explanations or treatment notes, and were entitled to little weight. (R. at 166-69); <u>see</u> <u>Mason</u>, 994 F.2d at 1065-66. The forms were completed for the Pennsylvania Department of Public Welfare as part of an assessment for a state disability program, similar to the doctor's reports ignored as irrelevant in <u>Hartranft</u>, which were completed for a workers' compensation claim. (R. at 166-69); <u>see</u> <u>Hartranft</u>, 181 F.3d at 362.

The ALJ considered the medical findings of Dr. Navalgund and Dr. Jabbour and declined to follow Dr. Jabbour's assessment of plaintiff's disability due, among other considerations, to the lack of supporting treatment notes. Under those circumstances, the court finds there is substantial evidence of record to support the weight afforded to the opinions of plaintiff's treating physicians.

**III.)   The ALJ did not err in his determination that plaintiff's combination of impairments did not meet the criteria of any listed impairment in 20 C.F.R. § 404, subpart P, appendix 1.**

At step three, the administrative law judge must determine whether the claimant's impairments match or are equivalent to one of the impairments listed in 20 C.F.R. § 404, subpart P, appendix 1. <u>Burnett v. Comm'r of Soc. Sec. Admin.</u>, 220 F.3d 112, 119 (3d Cir. 2000). If the claimant has more than a single impairment, the administrative law judge must consider whether the combination of impairments is equivalent to any listed impairment. <u>Burnett</u>, 220 F.3d at 119.

If the claimant's impairments meet or are equivalent to any of the listed impairments, he is *per se* disabled.  Id.  In conducting a step three analysis, the administrative law judge must give the reasons behind his decision.  Id.  He is, however, not required to follow any particular format or to use any particular language.  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

If an impairment or combination of impairments is at least equivalent in severity and duration to the listed criteria, it is medically equivalent to a listed impairment. 20 C.F.R. § 416.926(a).  Medical equivalence is determined based upon all relevant evidence in the record which pertains to the claimant's impairments and their effects on the claimant.  Id. § 416.926(c).  In determining medical equivalence, the administrative law judge will not substitute allegations of pain for missing signs or laboratory findings to raise the severity of the impairment to that of a listed impairment.  Id. § 416.929(d)(3).  Although an administrative law judge will consider the findings of a medical consultant when determining medical equivalence, the ultimate question of a claimant's disability is reserved for the administrative law judge.  Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000) (citing 20 C.F.R. § 404.1527(e)).

In Burnett, the administrative law judge rejected the appellant's claim of disability due to knee and back injuries.  Burnett, 220 F.3d at 117.  At step three of the evaluation, the administrative law judge summarily concluded that the plaintiff's injuries were not equivalent to any listed impairments, failing to mention any of the specific listed impairments considered.  Burnett, 220 F.3d at 117, 119.  The court recognized that an administrative law judge must set forth the reasons for his decision and when an administrative law judge fails to do so, a court is unable to review properly the decision.  The court of appeals remanded for the administrative law judge to reconsider, among other things, the step three analysis.  Id. at 117.  In those

circumstances the administrative law judge's decision was "hopelessly inadequate." Id. at 119-20.

The court of appeals later clarified its decision in Burnett. In Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004), the court of appeals affirmed an administrative law judge's rejection of the appellant's claim of disability due to asthma and hives. The administrative law judge in Jones determined that the claimant's impairments did not meet or equal any listed impairment at step three of the analysis and did not mention any of the specific listed impairments considered or his rationale for rejecting them. Jones, 364 F.3d at 503. The court explained that Burnett does not "require the ALJ to use particular language or adhere to a particular format in conducting his analysis… [but rather functions to] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. The court found the administrative law judge's step three analysis satisfied Burnett because the decision as a whole showed the administrative law judge considered the appropriate factors in reaching the conclusion that the claimant did not meet the requirements for any listing. Jones, 364 F.3d at 505.

In Knepp, the court of appeals affirmed the administrative law judge's rejection of the appellant's claim of disability due to serious injuries sustained from a high voltage electrocution. Knepp, 204 F.3d at 79-80. At the third step of the administrative law judge's evaluation, he found the appellant's impairments were not equivalent to any listed impairments. Id. at 82. In doing so, the administrative law judge rejected contrary testimony by a medical expert he called to evaluate the appellant, stating that the expert had misconstrued the scope of the listings in concluding they were equivalent to the appellant's injuries. Id. The appellant claimed that the administrative law judge's rejection of the doctor's testimony was improper, but the court

explained that "the ultimate decision concerning the disability of a claimant is reserved for the Commissioner." Id. at 85. The court further explained that it was proper to reject the medical expert's testimony when the regulations he cited were inapplicable to the case as a matter of law. Id. at 87.

Plaintiff argues that the ALJ's step three determination was without sufficient rationale and the ALJ failed to consider properly plaintiff's testimony and medical evidence. The ALJ determined that plaintiff did not have any impairment or combination of impairments that met or was medically equivalent to a listed impairment. (R. at 14.) He discussed several listed impairments and the reasons why plaintiff failed to meet their requirements. (R. at 14.) He stated that plaintiff failed to meet the requirements of Listing 1.02B[7] because there was

> no evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or ankylosis of the affected joint with involvement of one major peripheral joint . . . in each upper extremity resulting in an inability to perform fine and gross movements effectively.

---

[7] 1.02 Major dysfunction of a joint(s) due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With

> *   *   *

> B. Involvement of one major peripheral joint in each upper extremity (*i.e.*, shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively . . . .

20 C.F.R. § 404, subpart P, appendix 1.

(R. at 14.)  He noted that plaintiff did not meet the requirements of Listing 1.06[8] or 1.07[9] because there was no evidence of nonunion in any upper or lower extremity.  (R. at 14.)

Plaintiff cites <u>Burnett</u> and <u>Jones</u> in support of his argument that the ALJ's rationale was inadequate.  Those decisions, however, do not require that any particular format or language be used in an analysis of step three.  <u>Jones</u>, 364 F.3d at 505.  Instead, as explained in <u>Jones</u>, <u>Burnett</u> stands for the broad requirement that the administrative law judge must develop the record sufficiently enough for his decision to be meaningfully reviewed.  <u>Id.</u>  In <u>Jones</u>, the court found the administrative law judge had sufficiently developed the record, even though he did not note the specific listings he had considered or his rationale for rejecting them, because the decision as a whole reflected that he had considered the appropriate factors.  <u>Id.</u>  Here, the ALJ provided a much more thorough step three analysis than the administrative law judge in <u>Jones</u>.  Unlike the administrative law judge in <u>Burnett</u>, the ALJ noted the specific listings he considered and his rationale for rejecting them.  (R. at 14.)

---

[8] 1.06  Fracture of the femur, tibia, pelvis, or one or more of the tarsal bones. With

   A.  Solid union not evident on appropriate medically acceptable imaging and not clinically solid; and

   B.  Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.

20 C.F.R. § 404, subpart P, appendix 1.

[9] 1.07 Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. § 404, subpart P, appendix 1.

As previously discussed, the ALJ did not err in evaluating plaintiff's testimony and medical evidence. Thus, plaintiff's claim that the ALJ's step three determination was impaired by an improper evaluation of plaintiff's testimony and medical evidence is without merit. Even if the court were to accept plaintiff's medical evidence as he wishes, he provided insufficient evidence to meet any listed impairment. In Knepp, the medical opinion rejected directly addressed equivalence with a listed impairment. Here, Dr. Jabbour's opinion is one indicating that plaintiff is generally disabled. It does not address the specific requirements of any listing. Therefore, the ALJ did not err in affording little weight to Dr. Jabbour's assessment.

Additionally, plaintiff missed a consultative examination which might have aided in determining medical equivalence. Missing a scheduled consultative examination is a ground for denial of a claim under 20 C.F.R. § 416.918. Under those circumstances, the ALJ's failure to consult a physician on the question of medical equivalence is not a ground for reversal or remand.

The ALJ provided a sufficient rationale for his decision with respect to the step three analysis, and the court finds there is substantial evidence of record to support the ALJ's determination that plaintiff's combination of impairments do not meet any listed impairment.

**IV.)    The ALJ did not err in determining plaintiff's RFC.**

A disability claimant's RFC is the most work that they can perform despite their limitations. 20 C.F.R. § 416.945(a)(1). A claimant's RFC is to be assessed based upon all relevant evidence in the case record. Id. In general, a claimant is responsible for providing relevant evidence. Id. § 416.945(a)(3). An administrative law judge, however, is responsible for developing a complete medical history before making a determination that a claimant is not disabled. Id. When an administrative law judge solicits the opinion of a vocational expert, the

hypothetical he poses must reflect all impairments supported by the record.  Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004).  If the hypothetical does not reflect all impairments supported by the record, the vocational expert's answer cannot be substantial evidence.  Ramirez, 372 F.3d at 546.

In determining plaintiff's RFC, the ALJ discussed the relevant evidence, including plaintiff's testimony and medical evidence.  (R. at 15-16.)  Plaintiff failed to attend a scheduled consultative examination which may have elicited information about plaintiff's RFC and the side-effects of plaintiff's medication.  Under those circumstances, the ALJ did not err in determining that plaintiff is capable of performing sedentary work.  The ALJ's decision was supported by substantial evidence.

### Conclusion

For the reasons discussed above, the ALJ's determination that plaintiff is not disabled was supported by substantial evidence.  Therefore, plaintiff's motion for summary judgment (Docket No. 7) will be denied and defendant's motion for summary judgment (Docket No. 9) will be granted.

Dated:  May 29, 2009                                    By the court,

                                                        /s/ JOY FLOWERS CONTI
                                                        Joy Flowers Conti
                                                        United States District Judge